**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Madrona Health Incorporated, | No. CV-23-01968-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Nationwide General Insurance Company, | |
| Defendant. | |

Before the Court is Defendant Nationwide General Insurance Company's Motion for Partial Summary Judgment (Doc. 45).

**I.    BACKGROUND**

In June 2021, a fire occurred at Plaintiff Madrona Health Incorporated's administrative office. (Doc. 45 ¶ 2.) The fire disrupted Madrona's business operations by preventing it from billing Medicare. (*See* Doc. 1-3 ¶¶ 20-21.) Madrona filed a claim with Nationwide to supplement lost business income caused by the fire. (Doc. 45 ¶ 3, ¶ 17.)

This lawsuit arises from Nationwide's response to Madrona's claim. Nationwide paid around $175,000 of lost business income during the claim period. (*Id.* ¶ 54.) The complaint brings two causes of action: breach of contract and breach of the obligation of good faith and fair dealing. (Doc 1-3 at 10-13.) The crux of both claims is Nationwide should have paid more under the insurance policy. (*See id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of the matters asserted).

## III. DISCUSSION

Nationwide's motion seeks summary judgment on Madrona's bad faith claim, the availability of punitive damages, and the "part of Madrona's breach of contract claim that alleges Nationwide breached the policy in its payments or failure to pay after October 31, 2021—the end of the period of restoration." (Doc. 45 at 2, 16.)

### A. Breach of the Covenant of Good Faith and Fair Dealing

An insurer breaches the implied covenant of good faith and fair dealing when it, "intentionally denies, or fails to process or pay a claim, without a reasonable basis." *Zilisch v. State Farm Mut. Auto. Ins.*, 196 Ariz. 234, 237 (2000) (quoting *Noble v. Nat'l Am. Life Ins.*, 128 Ariz. 188, 190 (1981)). Arizona law employs a two-part test for bad faith claims. *Christie's Cabaret of Glendale LLC v. United Nat'l Ins.*, 562 F. Supp. 3d 106, 121 (D. Ariz. 2021). Part one is an objective test, asking "whether the insurer acted unreasonably toward the insured." *Id.* Part two is a subjective test, considering "whether the insurer acted knowingly or with reckless disregard as to the reasonableness of its actions." *Id.*

At the summary judgment stage, the subjective prong asks if sufficient evidence exists from which a reasonable juror "could conclude that in the investigation, evaluation,

and processing of [a] claim, the insurer . . . either knew or was conscious of the fact that its conduct was unreasonable." *Finkelstein v. Prudential Ins. Co. of Am.*, 709 F. Supp. 3d 828, 845 (D. Ariz. 2024). An insurer's belief is normally a question of fact determined by a jury. *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1166 (D. Ariz. 2014). But "if the insured offers no significantly probative evidence that calls into question the insurer's subjective belief[,] . . . the court may rule on the issue as a matter of law." *Id.*

### 1. Underpayment of Madrona's Claim

Madrona begins by arguing subjective intent is shown through Nationwide changing its payment methodologies throughout the claim period. (Doc. 50 at 11.) It asserts these changes indicate Nationwide intended to underpay the business losses owed under the insurance policy. (*Id.*) To support its argument, Madrona presents several pieces of evidence: an affidavit from its president and CEO, a payment from Nationwide in June 2025, and various emails.

Construing this evidence in the light most favorable to Madrona, it indicates Nationwide changed its payment methodology throughout the claim period. (*See* Doc. 50-1 at 4.) But it does not support the idea Nationwide intentionally made those changes to reduce its payment obligations. *See Echanove v. Allstate Ins.*, 752 F. Supp. 2d 1105, 1109 (D. Ariz. 2010) (explaining a bad faith claim requires evidence an insurer's calculations were made intentionally or maliciously). The evidence shows Nationwide provided spreadsheets explaining the calculations for each payment and answered questions when asked by Madrona. (*See, e.g.*, Doc. 50-7 at 72-73.) No reasonable juror would view such evidence as indicating Nationwide knew its actions were improper under the policy. *Finkelstein*, 709 F. Supp. 3d at 845. They only indicate a desire to proceed transparently.

The closest Madrona can get is an email between Nationwide employees. The email states Nationwide needs to reconsider its reserve number because Madrona is claiming an average business income loss of $52,000 a month. (Doc. 57-7 at 60.) Madrona asserts the reference to $52,000 indicates Nationwide had a secret calculation and understood it was underpaying the claim. (Doc. 50 at 4.) But Nationwide provides supplemental evidence

showing its use of $52,000 was because of documents submitted by Madrona.[1] (Doc. 53-1 ¶ 14.) With this broader context, no reasonable juror could conclude Madrona knew it was underpaying the claim based on the email. The email simply shows Nationwide was preparing for possible future expenses.

Madrona also points to a June 2025 payment from Nationwide as evidence of bad faith. The email, however, explicitly states the payment was offered in "good faith" to resolve a disagreement between expert opinions. (Doc. 50-6 at 1.) It further states Nationwide did not necessarily agree an underpayment occurred. (*See id.*) Finally, even if Nationwide had agreed there was an underpayment, "[a]n insurer's honest mistake, bad judgment, or negligence does not constitute bad faith." *Echanove*, 752 F. Supp. 2d at 1109. Thus, a supplemental payment does not satisfy the subjective prong of a bad faith claim without evidence the insurer was intentionally using an improper methodology. *See id.* The evidence cited by Madrona makes no such suggestion.

### 2.     No Payments Beyond October 31, 2021

Madrona next argues subjective intent is shown through Nationwide ceasing its business loss payments after November 2021. (Doc. 50 at 12.) It explains a letter from Nationwide extended payments through December 2021. (*Id.* at 9.) Failure to make that December payment, according to Madrona, evidences bad faith. (*See id.*)

Nationwide had to make business loss payments to Madrona during the "period of restoration," which the insurance policy defined as ending "[t]he date when the property . . . should be repaired, rebuilt, or replaced with reasonable speed and similar quality." (Doc. 50-8 at 22, 56.) The parties initially agreed the "period of restoration" for Madrona's administrative office would be until October 31, 2025. (Doc. 45-1 at 134.) It is undisputed Nationwide paid Madrona business losses through the end of November 2021. (Doc. 45 ¶ 54.)

What remains in dispute is the effect of a December 10, 2021, letter from Nationwide. (Doc. 50-7 at 88.) Madrona believes the letter indicates a promise to pay

---

[1] The Court granted Nationwide leave to file supplemental evidence in response to Madrona's opposition briefing. (Doc. 57.)

1  business losses through the end of the year. (Doc. 50 at 12.) Nationwide believes the letter
2  is a contingent extension of benefits that does not change the previously agreed upon
3  "period of restoration" date. (Doc. 54 at 9.)

4        The letter states Nationwide would extend Madrona's business income payments to
5  December 31, 2021, "contingent upon information received . . . and [a] review from
6  forensic accountant Mike Vandermaten." (Doc. 50-7 at 88.) The letter further states
7  Nationwide offers its extension of coverage knowing it "is beyond the initial October time
8  frame of a reasonable expectation of repairs" and despite there being "no evidence that
9  repairs are being actively pursued." (*Id.*) Construing this letter in the light most favorable
10 to Madrona, it is a contingent offer to extend the period of restoration to December 31,
11 2021.

12       The evidence shows the parties initially agreed the "period of restoration" would
13 last until October 31, 2021. (Doc. 45-1 at 134.) Given this agreement, Nationwide could
14 have refused business loss payments after October 31, 2021, and still had a "founded
15 belief" its conduct was permissible under the insurance policy. *Zilisch*, 196 Ariz. at 237.
16 The December 10, 2021, letter from Nationwide does not change this outcome because it
17 is—at best—a contingent offer to extend the period of restoration. Madrona does not point
18 to any evidence showing it submitted business expenses for the month of December. Even
19 if it had, no reasonable juror would conclude Nationwide knew it was acting improperly
20 by offering Madrona greater benefits than what the parties agreed was required under the
21 policy. *See Rawlings*, 151 Ariz. at 160.

          **3.**    **Failure to Promptly Pay Undisputed Funds**

23 Madrona finally argues subjective intent is shown through Nationwide waiting six
24 months to pay "undisputed funds." (Doc. 50 at 13.) Madrona does not specify what funds
25 it is referring to. The Court's best guess is the June 2025 payment from Nationwide. (*Id.* at
26 4; Doc. 50-6 at 1.) Nationwide, however, never said those funds were undisputed. Indeed,
27 the letter suggests Nationwide disagreed that it needed to make another payment but did so
28

as a "good faith" gesture to resolve a dispute between experts. No reasonable juror could conclude Nationwide knew it was acting improperly by providing the money.

Therefore, the Court will grant summary judgment in favor of Nationwide on the bad faith claim. Madrona points to no probative evidence that calls into question Nationwide's subjective belief its actions were improper. *See Temple*, 40 F. Supp. 3d at 1166.

### B. Punitive Damages

The complaint only seeks punitive damages "as a result of [Nationwide's] tortious breach of the obligation of good faith and fair dealing." (Doc. 1-3 ¶ 47.) Thus, granting summary judgment on Madrona's bad faith claim also removes the availability of punitive damages.

### C. Breach of Contract

A "breach of contract claim involves two issues: (1) the interpretation of the [p]olicy language and (2) [the insured's] eligibility under the [p]olicy." *Finkelstein*, 709 F. Supp. 3d at 836. Interpretation of the policy requires giving the words "their plain and ordinary meaning, examining the policy from the viewpoint of an individual untrained in law or business." *Id.* (citation omitted). A district court then takes its interpretation and compares it against the facts presented during summary judgment. *See id.* If those facts demonstrate no reasonable juror could conclude the insurer breached its obligations under an insurance policy, summary judgment is appropriate.

Nationwide asks the Court to grant summary judgment on the "part of Madrona's breach of contract claim that alleges Nationwide breached the policy in its payments or failure to pay after October 31, 2021—the end of the period of restoration." (Doc. 45 at 16.) The insurance policy required Nationwide to make business loss payments to Madrona during the "period of restoration," which the insurance policy defined as ending "[t]he date when the property . . . should be repaired, rebuilt, or replaced with reasonable speed and similar quality." (Doc. 50-8 at 22, 56.) What constitutes "reasonable speed" is often a question of fact left for the jury. *See Zancanaro v. Cross*, 85 Ariz. 394, 398 (1959).

Here, Nationwide argues the Court can decide "reasonable speed" as a matter of law because the parties initially agreed the period of restoration would last until October 31, 2021. (Doc. 45 at 134.) Nationwide, however, does not argue the parties' agreement amends the insurance policy or otherwise changes its obligation to pay business losses for a reasonable amount of time. Madrona points to factors that it argues slowed down the restoration process, making the October 31, 2021, estimated completion date untenable. More specifically, Madrona contends that a lack of cooperation from the building's landlord, who is not a party here, resulted in a delay in the restoration process. This means a dispute of material fact remains that is best left for a jury. *5205 Lincoln LLC v. Owners Ins.*, No. CV-19-05218-PHX-JJT, 2021 WL 4427059, at *3 (D. Ariz. 2021) ("[A] factfinder must determine the period of restoration.").

Therefore, the Court will deny Nationwide's request for summary judgment on the breach of contract claim.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendant Nationwide General Insurance Company's Motion for Partial Summary Judgment (Doc. 45) as discussed herein.

Dated this 19th day of September, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

- 7 -